IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY J. CATERBONE and | : | |
| ADVANCED MEDIA GROUP, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 17-867 |
| | : | |
| v. | : | |
| | : | |
| NATIONAL SECURITY AGENCY, or | : | |
| NSA; DEFENSE ADVANCED | : | |
| RESEARCH PROJECT AGENCY, or | : | |
| DARPA; DEPARTMENT OF DEFENSE; | : | |
| DEFENSE INTELLIGENCE AGENCY, or | : | |
| DIA; CENTRAL INTELLIGENCE | : | |
| AGENCY, or CIA; FEDERAL BUREAU | : | |
| OF INVESTIGATION, or FBI; UNITED | : | |
| STATES DEPARTMENT OF JUSTICE; | : | |
| UNITED STATES ATTORNEY | : | |
| GENERAL; PENNSYLVANIA STATE | : | |
| POLICE; PENNSYLVANIA ATTORNEY | : | |
| GENERAL; LANCASTER COUNTY | : | |
| COMMISSIONERS; LANCASTER | : | |
| COUNTY CRISIS INTERVENTION; | : | |
| LANCASTER COUNTY SHERIFF | : | |
| DEPARTMENT; LANCASTER MAYOR | : | |
| RICK GRAY; LANCASTER CITY | : | |
| BUREAU OF POLICE; DETECTIVE | : | |
| CLARK BEARINGER, LANCASTER | : | |
| CITY BUREAU OF POLICE, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                                    March 28, 2017

The *pro se* plaintiff, a purported telepath, has commenced a civil rights action against various federal, state, and local authorities based primarily on allegations that the government has been reading and controlling his mind for three decades.  Due to the plaintiff's prior, unsuccessful (a term he disputes) attempts to assert these precise claims in this district, he

originally filed this case in the Middle District of Pennsylvania hoping that the court would accept venue over the case.  Although the Middle District of Pennsylvania granted the plaintiff's request to proceed *in forma pauperis*, the court unsurprisingly transferred the case here because of improper venue.

Pursuant to 28 U.S.C. § 1915(e)(2), the court has thoroughly reviewed the plaintiff's amended complaint in this case.  The court has also reviewed his other submissions, including three motions he filed after commencing the action.  As explained in more detail below, the court will dismiss the amended complaint because (1) the allegations are factually frivolous, (2) it fails to comply with Rule 8 of the Federal Rules of Civil Procedure, (3) the plaintiffs improperly attempt to raise civil claims based on criminal statutes, (4) several of the defendants are immune from the plaintiffs' constitutional claims brought under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and (5) many of the constitutional claims are time barred.  The court will also deny the plaintiffs' motions.  Nonetheless, the court will allow the plaintiffs an opportunity to file an amended complaint regarding incidents that occurred with at least one of the defendants when the individual plaintiff was subjected to two involuntary commitments in 2015 and 2016.

## I.     ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Stanley J. Caterbone ("Caterbone"), purportedly representing himself and an entity identified as Advanced Media Group, commenced an action against the defendants, the National Security Agency ("NSA"), the Defense Advanced Research Project Agency ("DARPA"), the Department of Defense, the Defense Intelligence Agency ("DIA"), the Central Intelligence Agency ("CIA"), the Federal Bureau of Investigation ("FBI"), the United States Department of Justice, the United States Attorney General, the Pennsylvania State Police,

the Pennsylvania Attorney General, the Lancaster County Commissioners, Lancaster County Crisis Intervention, the Lancaster County Sheriff's Department, former Lancaster Mayor Rick Gray, the Lancaster City Bureau of Police, and Detective Clark Bearinger of the Lancaster City Bureau of Police, on December 21, 2016, in the United States District Court for the Middle District of Pennsylvania.  *See* Doc. Nos. 1, 1-1 – 1-6.[1]  Caterbone also filed a motion for leave to proceed *in forma pauperis*.

The plaintiffs' initiating document, which is noted on the docket as a complaint, is titled: "Preliminary Injunction for Emergency Relief § 1512. Tampering with a witness, victim, or an informant."  *See* Doc. No. 1-1 at 1.  The document is voluminous and rambling, and it totals 181 pages including exhibits.  *See* Doc. Nos. 1-1 – 1-6.[2]

It appears that Caterbone, a resident of Lancaster County who has previously filed numerous civil actions in this district,[3] filed the action on behalf of the plaintiffs in the Middle District of Pennsylvania because the Eastern District is a "[h]ostile [e]nvironment" and is "being used as a means of causing severe mental anguish, pain, and suffering – which is in essence obstruction of justice in the most extreme sense[.]"  *See* Doc. No. 1 at 2.[4]  Caterbone acknowledges that, through the instant action, he is attempting to complete his prior, voluntarily

---

[1] The case was docketed at Civil Action No. 1:16-cv-2513-YK.  Doc. No. 1.

[2] Unfortunately, the document is broken down into numerous parts on the docket.

[3] Those actions include, among others:  *Caterbone v. Lancaster County Prison, et al.*, No. CIV. A. 05-2288, *In re: Stanley J. Caterbone*, No. CIV. A. 06-4154, *Caterbone, et al. v. Wenger, et al.*, No. CIV. A. 06-4650, *Caterbone, et al. v. International Signal & Control, Plc., et al.*, No. CIV. A. 06-4734, *In re: Caterbone, et al.*, No. CIV. A. 06-5117, *Caterbone v. The Commonwealth of Pa., et al.*, No. CIV. A. 15-3984, *Caterbone, et al. v. Commonwealth of Pa. Dep't of Transp. Bureau of Driver Licensing, et al.*, No. CIV. A. 08-2981, *Caterbone, et al. v. Lancaster City Police Bureau, et al.*, No. CIV. A. 08-2982, *Caterbone, et al. v. County of Lancaster, et al.*, No. CIV. A. 08-2983, *Caterbone, et al. v. Fulton Fin. Corp., et al.*, No. CIV. A. 10-1558, *Caterbone v. Lancaster Behavioral Health/Crisis Intervention, et al.*, No. CIV. A. 15-3984, *In re: Caterbone*, No. 16-mc-49, *Caterbone, et al. v. The United States of Am., et al.*, No. CIV. A. 16-4014, *Caterbone v. Obama, et al.*, No. CIV. A. 16-4641.

In addition to these actions, Caterbone has decided to intercede in habeas proceedings involving Lisa Michelle Lambert, and he appears to be fixated on her criminal case.  *See* Brief on Behalf of Amici Curiae Stanley J. Caterbone and Advanced Media Group in Supp. of Lisa Michelle Lambert's Habeau [sic] Corpus, *Lambert v. Bissonette*, No. CIV. A. 14-2559, Doc. No. 4.  He has also filed an amicus brief on behalf of former Pennsylvania Attorney General Kathleen Kane in her recent criminal case in state court.

[4] The court cites to the page number at the bottom of the document, even though it is broken up into multiple parts.

dismissed action filed in this court at Civil Action No. 16-4014.  *See id.* ("THE PLAINTIFF IS ATTEMPTING TO COMPLETE THE "Case No. 16-cv-4014 CATERBONE v. [T]he United States of America et[] al., COMPLAINT December 20, 2016.").  In support of his desire to have his case heard in the Middle District of Pennsylvania, Caterbone asserts, *inter alia*, that (1) he will have to expend substantially less costs in litigating in the Middle District of Pennsylvania, (2) "computer hackers have left [him] without most of his online accounts, including PACER, which is used to file and track federal cases leaving [him] to travel to the U.S. Courthouse in Philadelphia on a semi[-]weekly basis to obtain docket sheets for his federal cases," and (3) "[a]ttendance of any and all court related hearings, if required, would be possible in the Middle District Court, and unimaginable in the Eastern District anticipating the perpetrators would make it difficult, if not impossible, when resolutions are in the works; already proven to happen on numerous occasions."  *Id.*

In addition to the aforementioned purported reasons to have the Middle District of Pennsylvania preside over his previously voluntarily dismissed civil action, the plaintiffs include a "**Notice and Disclaimer**" with their initiating document.  *Id.* at 3.  The notice and disclaimer states in pertinent part as follows:

> **Notice and Disclaimer:  Stan J. Caterbone and the Advanced Media Group have been slandered, defamed, and publicly discredited since 1987 due to going public (Whistle Blower) with allegations of misconduct and fraud within International Signal & Control, Plc. of Lancaster, Pa. (ISC pleaded guilty to selling arms to Iraq via South Africa and a $1 Billion Fraud in 1992).  Unfortunately we are forced to defend our reputation and the truth without the aid of law enforcement and the media, which would normally prosecute and expose public corruption.  We utilize our communications to thwart further libelous and malicious attacks on our person, our property, and our business.  We continue our fight for justice through the Courts, and some communications are a means of protecting our rights to continue in our pursuit of justice.  Advanced Media Group is also a member of the media. . . . How long can Lancaster County and Lancaster City hide me and Continue**

**to Cover-Up my Whistle Blowing of the ISC Scandel [sic] (And the Torture from U.S. Sponsored Mind Control)?**

*Id.*

In the portion of the initiating document in which the plaintiffs include their arguments in support of their request for injunctive relief, Caterbone asserts that "he has been a prisoner of the 'state' since 1987," and he has been subjected to a "daily occurrence of assaults." *Id.* at 4. With respect to the precise relief requested, the plaintiffs (in reality, it is just Caterbone) state:

> The **PLAINTIFF** seeks immediate relief from the above in the form of sanctions and fines for those guilty of extortion and embezzlement and those withholding accounts receivables. **PLAINTIFF** seeks immediate relief from the law enforcement agencies that continue abuse of process. **PLAINTIFF** seeks relief, in as much as the courts are able, with regards to the harassment and torture from those known of such crimes. The Complainant seeks relief from stalking and harassing neighbors and requires law enforcement to make sure households can identify all occupants and prove they are entitled to the lease and or deed. Due to the actions and criminal activity of the above named DEFENDANTS, it is reasonable to prove that every aspect of **PLAINTIFF'S** life, is subject to undo [sic] influence; harassment; torture; obstruction; etc. thus resulting in irreparable harm and injury. This situation and set of circumstances as outlined here, and all previous filings; reports; and statements, is a prescription for only one endgame – death or suicide. There is no life action or activity that is immune from this horrendous HATE CRIME. The precedent and landmark elements that make this so appalling is that the Complainant has never done anything to set these circumstances in motion but to be right regarding International Signal & Control back in 1987; as well as many other proclamations and forecasts. That being said, it is also widely reported that many Targeted Individuals and Victims of U.S. Sponsored Mind Control are lead to death and/or suicide. The Lancaster Community-At-Large is guilty of creating; abetting; fostering; and executing this tragedy. The fact that local; state; and federal law enforcement induce and encourage this environment of hate is landmark.

*Id.* Caterbone further states that he is seeking to have the court (1) award him amounts set forth in his "pro se billings invoice," and (2) enter summary judgment in all of his cases filed in the Lancaster County Court of Common Pleas and in this court. *Id.* at 5.

Caterbone then goes on to discuss "targeted individuals" (these are individuals declared to be an "enemy of the state"), the FBI's counter intelligence program ("COINTELPRO") and its

history, and CIA mind control experiments with descriptions of some of them.  *Id.* at 6-28.  He

then provides some biographical information about himself and Advanced Media Group.  *Id.* at

29-34.  The following is just a sample of some of the biographical information provided by the

plaintiffs:

> **CATERBONE** had been a victim of organized stalking since 1987 and a victim
> of electronic and direct energy weapons since 2005.  **CATERBONE** had also
> been telepathic since 2005.  In 2005 the U.S. Sponsored Mind Control turned into
> an all-out assault of mental telepathy; synthetic telepathy; hacking of all
> electronic devices; vand[a]lism and thefts of personal property, extortions,
> intellectual property violations, obstruction of justice; violations of due process;
> thefts and modifications of court documents; and pain and torture through the use
> of directed energy devices and weapons that usually fire a low frequency
> electromagnetic energy at the targeted victim.  This assault was no coincidence in
> that it began simultaneously with the filing of the federal action in U.S. District
> Court, or CATERBONE v. Lancaster County Prison, et al., or 05-cv-2288.  This
> assault began after the handlers remotely trained/synchronized Stan J. Caterbone
> with mental telepathy.  The main difference opposed to most other victims of this
> technology is that **CATERBONE** is connected 24/7 with the same person who
> declares telepathically she is a known celebrity.  Over the course of 10 years
> **CATERBONE** had been telepathic with at least 20 known persons and have
> spent 10 years trying to validate and confirm their identities without success.
> Most U.S. intelligence agencies refuse to cooperate, and the Federal Bureau of
> Investigation and the U.S. Attorney's Office refuse to comment and act on the
> numerous formal complaints that are filed in their respective offices. . . . .

> **CATERBONE** had a very sophisticated and authentic library of evidence of the
> use of U.S. Sponsored Mind Control technologies on my father and brother that
> dates back to the 1940's while my father was in the U.S. Navy after he graduated
> with honors from Air Gunners School in Florida, including an affidavit motorized
> [sic] and authenticated by my father in 1996.  My brother served in the U.S. Air
> [F]orce and was victim to LSD experiments of the infamous MKULTRA program
> in the late 1960's.

> . . .

> **In 2009 CATERBONE** [p]roposed an ORGANIZED STALKING AND
> DIRECTED ENERGY WEAPONS HARASSMENT BILL to Pennsylvania
> House of Representative Mike Sturla (Lancaster, Pennsylvania) and City of
> Lancaster Mayor Richard Gray in 2009.  The draft legislation is the work of
> Missouri House of Representative Jim Guest, who has been working on helping
> victims of these horrendous crimes for years.  The bill will provide protections to
> individuals who are being harassed, stalked, harmed by surveillance, and

assaulted; as well as protections to keep individuals from becoming human research subjects, tortured, and killed by electronic frequency devices, directed energy devices, implants, and directed energy weapons.  **CATERBONE** again reintroduced the bill to the Pennsylvania General Assembly in 2015 and frequented the Pennsylvania Capitol trying to find support and a sponsor; which **CATERBONE** still do [sic] to this day.

*Id.* at 30-31.[5]

While the court has specifically referenced the aforementioned sections of the complaint, the initiating document in general contains allegations of CIA and FBI programs dating back to the 1940s, and events in Caterbone's life going back to the 1980s, including his diagnosis with certain psychiatric conditions and his personal, professional, and legal woes.  *See, e.g.*, Doc. No. 1-2, Doc. No. 1-3 at 80-110.  The complaint recounts Caterbone's arrests and criminal prosecutions in Lancaster County and Stone Harbor, New Jersey, in the late 1980s, early 1990s, and in the 2005 to 2007 time frame.  *See, e.g.*, Doc. No. 1-2 at 47-48, 49-51, 66, 78, 98-99, 102.  Although the court has thoroughly reviewed the complaint, it is unclear how all of Caterbone's allegations relate to each other or give rise to claims against the defendants, and the court will not recount all of them here.

Nonetheless, to the extent any harmonizing theme can be gleaned from the complaint, Caterbone appears to be alleging that federal, state, and local governments are conspiring against him, attacking him, torturing him, and threatening his life and property, thereby violating various federal and civil rights laws.  The basis for those allegations is, as referenced above, Caterbone's claim that since 1987, he has been a "victim of organized stalking" because of his alleged whistleblowing activities against a defense contractor, and that since 2005, the federal

---

[5] As indicated here, Caterbone believes that the mind control devices used against him in 2005 were, at least in part, a response to a civil rights lawsuit he filed against the Lancaster County Prison and others.  *See Caterbone v. Lancaster Cty. Prison, et al.*, No. CIV. A. 05-2288.  Caterbone voluntarily withdrew that lawsuit without prejudice—as well as several other lawsuits he filed against Lancaster County employees and/or state officials—in October 2008.  *Id.* at Doc. No. 69; *see also* No. CIV. A. 08-2983, No. CIV. A. 08-2982, No. CIV. A. 08-2981, No. CIV. A. 06-4650.  Several allegations in those lawsuits are replicated in the instant lawsuit.

government has been reading his mind, spying on him, and poisoning him.  Among other things, Caterbone claims that government authorities are using invisible directed electromagnetic radiation by flying jet planes around his home, which apparently caused him to develop telepathy.  It appears that Caterbone reported the government's mind-reading activity and other issues, including perceived personal and business slights, to local, state, and federal authorities, but the authorities did not address his concerns.  The complaint also reflects that Caterbone has been repeatedly involuntarily committed over the years, and that he believes those involuntary commitments were improperly fabricated to discredit his allegation about the government controlling his mind, hacking his computer, and otherwise "harassing" him.

Before the Middle District had an opportunity to address Caterbone's complaint and *in forma pauperis* motion, Caterbone filed an amended motion for a preliminary injunction with exhibits, totaling 193 pages, on December 27, 2016.  Doc. Nos. 1-10 – 1-18.  The allegations in the amended document largely duplicate those in Caterbone's complaint and reiterate Caterbone's belief that since 1987, the government has been controlling his mind because of his alleged whistleblowing activities.

On January 3, 2017, Magistrate Judge Martin C. Carlson issued a report and recommendation, which granted Caterbone leave to proceed *in forma pauperis* and recommended either dismissing the complaint or transferring it to the Eastern District of Pennsylvania.[6]  The report recommended dismissing the complaint for the following reasons:

---

[6] Magistrate Judge Carlson granted Caterbone leave to proceed *in forma pauperis* even though his application reflected that he receives monthly income of $1,357, has access to $9,200 in a checking account, has $13,000 in a money market account, and owns a home valued at $20,000.  Caterbone's *in forma pauperis* application also claimed $2,235 in monthly expenses (inaccurately calculated as $2,432), including $300 for expenses related to recreation and entertainment, and claimed that he was owed $434,327 in "accounts receivables."

As previously indicated, Caterbone had previously attempted to file a similar lawsuit, which was docketed at Civil Action No. 16-4014.  Caterbone also sought leave to proceed *in forma pauperis* in that action based on a financial affidavit that was similar in many respects to the application he filed in the instant case.  *See Caterbone, et al. v. The United States of Am., et al.*, No. CIV. A. 16-4014, at Doc. No. 1.  This court sought to hold a hearing on

(1) it relied on fantastic or delusional scenarios as a basis for a cause of action, such that dismissal for lack of subject-matter jurisdiction was warranted under Rule 12(b)(1) of the Federal Rules of Civil Procedure; (2) it failed to comply with Rule 8 of the Federal Rules of Civil Procedure because it is incomprehensible and lengthy; (3) the Pennsylvania State Police was entitled to Eleventh Amendment immunity from claims based on 42 U.S.C. § 1983; (4) the doctrine of sovereign immunity barred any claims that Caterbone sought to raise pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) against the federal agencies; and (5) the applicable two-year statute of limitations barred many of Caterbone's claims.  Doc. No. 1-19, Report and Recommendation, at 9-22.  Alternatively, the report recommended transferring the case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406 because venue was improper in the Middle District of Pennsylvania.  *Id.* at 22-24.  The report further recommended denying Caterbone's motion for a preliminary injunction because his legal claims lacked merit.  *Id.* at 25-28.

In response to the report and recommendation, the plaintiffs filed a motion for reconsideration that essentially reiterated many of their allegations in their prior filings, and again submitted numerous exhibits.  Doc. No. 1-20.  In the motion, Caterbone pointed out that he filed the action, at least in part, to seek relief based on the same claims he previously voluntarily withdrew.  *See id.* at 1 (indicating that "this injunction was filed in an effort to continue the litigation that was ordered and remanded back to U.S. District Court by the U.S.C.A., and ordered withdrawn without prejudice (05-02288; 06-04650; 08-02982; 16-04641) by halting

---

the *in forma pauperis* application because it differed from a financial affidavit Caterbone had filed 45 days earlier in another civil matter.  Rather than attend the hearing in Easton, Pennsylvania, Caterbone withdrew the complaint. *See id.* at Doc. No. 4.  Thereafter, Caterbone began filing complaints in the Middle District of Pennsylvania based on his perception that this court is hostile to his claims.  Before filing the instant lawsuit, Caterbone filed a civil action in the Middle District of Pennsylvania—styled as a petition for a writ of habeas corpus—that was ultimately transferred to this district. *Caterbone v. Obama, et al.*, No. CIV. A. 16-4641.  The court denied Caterbone leave to proceed *in forma pauperis* and ultimately dismissed the case without prejudice due to Caterbone's failure to prosecute after he failed to pay the filing fee. *See id.* at Doc. No. 4.

illegal and criminal activities by the named said actors" (emphasis and all-capitalization omitted)).[7]   Judge Carlson issued a report and recommendation on January 9, 2017, which recommended denying the motion for reconsideration.  Doc. No. 1-27.  Caterbone responded to this second report and recommendation on January 26, 2017, by filing nearly two-hundred pages of exhibits and a purported "notice of appeal," which was docketed as a motion for reconsideration of the second report and recommendation.  Doc. Nos. 10-22 – 10-24.

On February 1, 2017, the Honorable Yvette Kane entered an order (1) adopting the January 3, 2017 report and recommendation to the extent it recommended transferring Caterbone's case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406, and (2) adopting the January 9, 2017 report and recommendation in its entirety.  Doc. No. 1-26.  Shortly after this district received the case from the Middle District of Pennsylvania, Caterbone filed a "Motion to File Exhibit DVD," in which he seeks to file a DVD containing copies of various briefs, motions, and other documents that he has filed over the years in state and federal courts, as well as other exhibits that allegedly support his claims in this case.  Doc. No. 2.  Caterbone also filed a "Motion to File Statement 'Enough is Enough'" on March 6, 2017, in which he asks the court for electronic filing privileges and reiterates his claims about government intrusions on his daily life.  Doc. No. 3.  On March 20, 2017, Caterbone filed a "Motion to File Exhibit Titled 'Letter to Huntington Bank Andrew Grimmit re March 7 Liquidation Offer March 17, 2017.'"[8] Doc. No. 4.

---

[7] This differed from Caterbone's original statement that he was looking to continue his previously voluntarily dismissed action at Civil Action No. 16-4014.

[8] This document appears to relate to a possible dispute relating to Caterbone's car loan.  *See* Doc. No. 4 at ECF p. 3. While it is unclear how this information specifically relates to the defendants identified in this lawsuit, Caterbone does reference his belief that at some point prior to March 7, 2017, stalkers pursued him "from leaving the Penn Square Marriot," and "a hacker took control of the steering" of his vehicle, causing it to hit a wrought iron railing in Lancaster, Pennsylvania.  *Id.*

## II.    DISCUSSION

### A.    Section 1915(e)(2) Review of the Plaintiffs' Claims

#### 1.    Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).[9]  In part, the purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). Although *pro se* complaints are subject to liberal construction, such construction does not displace the requirement that complaints must comply with Rule 8(a)(2).  *See Parker v. Learn the Skills Corp.*, No. 03-6936, 2004 WL 2384993, at *3 (E.D. Pa. Oct. 25, 2004) (noting this proposition).  "A district court may sua sponte dismiss a complaint for failure to comply with Rule 8; dismissal is appropriate in cases where the 'complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Tucker v. Secretary U.S. Dep't of Health and Human Servs.*, 645 F. App'x 136, 137 (3d Cir. 2016) (per curiam) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

As Caterbone is proceeding *in forma pauperis*, the court must dismiss the complaint if it is frivolous, fails to state a claim upon which relief can be granted, or asserts a claim against defendants immune from monetary relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").  A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v.*

---

[9] A complaint must also contain allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(d).

*Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).   In reviewing a *pro se* plaintiff's complaint, the court must liberally construe the allegations in the complaint.  *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339-40 (3d Cir. 2011) ("[W]hen presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally." (citation and internal quotation marks omitted)).

Regarding the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on Rule 12(b)(6) motions.  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).  Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).  Thus, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court must take the following steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679).

## 2.      Analysis

The plaintiffs' claims fail for essentially the reasons stated in Magistrate Judge Carlson's January 3, 2017 report and recommendation.  First (and primarily), Caterbone's claims fail because they are factually frivolous.  As indicated above, the general theme of Caterbone's numerous voluminous filings is that he has been the victim of telepathic intrusions, government sabotage, and harassment for approximately three decades because he acted as a whistleblower and filed various lawsuits.[10]  It appears that Caterbone has linked every adverse event in his life—arrests and involuntary commitments, medical and mental health issues, computer problems, and minor incidents of daily life—to that alleged conspiracy.  His allegations appear to be based on paranoia, delusions of grandeur, irrational thoughts, and/or fantastic scenarios that courts have consistently held lack an arguable basis in fact.  *See, e.g.*, *DeGrazia v. F.B.I.*, 316 F. App'x 172, 172 (3d Cir. 2009) (per curiam) (concluding that complaint was frivolous where plaintiff alleged that "at the age of four, he was the victim of a government-run, Nazi-designed genetic experiment which caused his body to combine with reptile DNA, and that he has since experienced harmful side effects which pose a threat to others"); *Gale v. Williams*, 154 F. App'x 494, 495 (7th Cir. 2005) (holding that complaint was frivolous where plaintiff alleged that his ex-wife "remained married to him for 18 years 'to use mind control techniques' and 'inject chemicals' into his 'food and water supply' in her role as an undercover government agent on a mission to ruin his life"); *Chambers v. Dir., C.I.A.*, No. CIV. A. 90-3321, 1990 WL 70155, at *1 (E.D. Pa. May 23, 1990) (dismissing complaint as frivolous where plaintiff alleged "that there is a grand conspiracy of the . . . defendants to harass the plaintiff through various method[s] including electroshock therapy, telekinesis, voice synthesizers, hypnotism, mental telepathy, and

---

[10] Although the court is limited to the allegations in the complaint in determining whether Caterbone has stated a plausible claim in this case, the court has considered all of Caterbone's filings in light of the fact that he is proceeding *pro se*.

cybernetics" because "the CIA is concerned about plaintiff's knowledge of the deaths of such people as Elvis Presley, Gordon Parks, Guy Lomardo, Judy Garland, Greta Garbo, Ralph Abernathy and Max Weiner"). Accordingly, the court will dismiss the complaint as factually frivolous.

Second, the complaint fails to comply with Rule 8. The disorganized nature of Caterbone's allegations and the volume of his filings renders it impossible for the defendants to meaningfully respond. Among other things, the complaint contains details about Caterbone's personal and family life, allegations about his claimed career and charity work, explanations of various government programs, and cites to numerous articles and statutes whose relevance is often unclear. Thus, the complaint is properly characterized as being "so excessively voluminous and unfocused as to be unintelligible," and it "[leaves] the defendants having to guess what of the many things discussed" forms the basis for the claims against them. *Binsack v. Lackawanna Cty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (per curiam). Therefore, the complaint also fails to comply with Rule 8.

Third, to the extent that Caterbone is attempting to raise claims under criminal statutes, *see* Doc. No. 1-1 at 1 (asserting entitlement to injunctive relief for purported violation of 18 U.S.C. § 1512, which relates to the offense of tampering with a witness, victim, or informant), those claims fail. Criminal statutes do not generally provide a basis for a litigant's civil claims. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."); *Davis v. Warden Lewisburg USP*, 594 F. App'x 60, 61 n.3 (3d Cir. 2015) (per curiam) (explaining that the plaintiff's claim for an alleged violation of his civil rights under 18 U.S.C. § 242 was "meritless because § 242 is a criminal statute, through which no private

cause of action is created"); *Stern v. Halligan*, 158 F.3d 729, 731 n.1 (3d Cir. 1998) (pointing out that the district court correctly "granted summary judgment on the 18 U.S.C. § 241 claim because there is no private cause of action under the criminal statute" (citing *Newcomb v. Ingle*, 827 F.2d 675, 677 n.1 (10th Cir. 1987)). This court also lacks the authority to initiate criminal proceedings. *See Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 n.1 (3d Cir. 2013) (per curiam) ("[T]here is no federal right to require the government to initiate criminal proceedings."); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 636 (E.D. Pa. 2014) ("[I]t is today beyond all reasonable doubt that "[t]he prosecution of violations of federal criminal law in federal court is a function of the federal government, not private parties, . . . and federal courts lack the power to direct the filing of criminal charges" (internal quotation marks and citations omitted)), *aff'd* 572 F. App'x 68 (3d Cir. 2014) (per curiam). In any event, Caterbone "lacks a judicially cognizable interest in the prosecution or nonprosecution of another," and has no right to a government investigation. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Boseski v. North Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").

Fourth, to the extent Caterbone raises constitutional claims under 42 U.S.C. § 1983 and *Bivens*, he has inappropriately sued several immune defendants.[11] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994). Although *Bivens* creates a damages remedy against individual federal agents for certain constitutional violations, it does not support a cause of action against federal

---

[11] Caterbone invokes numerous state and federal statutes in his many filings. It is unnecessary to address all of those statutes in light of the court's conclusion that the complaint is factually frivolous and fails to comply with Rule 8. Nonetheless, as the primary legal basis for Caterbone's claims appear to be section 1983 and *Bivens*, the court will note additional problems with those claims.

agencies.  *See id.* at 486 (concluding that "[a]n extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself," and holding that the plaintiff "had no *Bivens* cause of action for damages" against the Federal Savings and Loan Insurance Corporation); *see also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (explaining that *Bivens* "is concerned solely with deterring individual officers' unconstitutional acts"). Accordingly, there is no legal basis for Caterbone's claims against the seven federal agencies he sued.

In addition to Caterbone's inability to assert *Bivens* claims against the seven federal agency defendants, he may not assert section 1983 claims against the Pennsylvania State Police. "[T]he Pennsylvania State Police are immune from suit under the Eleventh Amendment." *Shine v. Merenda*, 586 F. App'x 95, 97 (3d Cir. 2014) (per curiam); *see Atkin v. Johnson*, 432 F. App'x 47, 48 (2011) (per curiam) ("The District Court correctly determined that the Eleventh Amendment bars claims for damages against the P[ennsylvania State Police], a state agency that did not waive its sovereign immunity." (citations omitted)).  In addition, even if the Pennsylvania State Police was not immune, Caterbone could not maintain a section 1983 claim against it because it is not a "person" for purposes of section 1983.  *See Will v. Department of State Police*, 491 U.S. 58, 66 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Graham v. PA State Police Lancaster Cty.*, No. CIV. A. 09-3016, 2009 WL 3682384, at *1 (E.D. Pa. Nov. 3, 2009) ("As an initial matter, Plaintiff's claim is not viable because the Pennsylvania State Police is not a 'person' for purposes of Section 1983.").

Finally, the vast majority of Caterbone's constitutional claims are time barred.  Although it does not appear that the Third Circuit Court of Appeals has issued a precedential opinion

addressing this issue, the court has repeatedly stated in non-precedential decisions that even though "the statute of limitations is an affirmative defense [under Rule 8(c) of the Federal Rules of Civil Procedure], a district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required." *Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (per curiam); *see Thornton v. Hens-Greco*, 629 F. App'x 251, 254 n.5 (3d Cir. 2015) (per curiam) (same); *Trimble v. Shaw*, 576 F. App'x 88, 90 (3d Cir. 2014) (per curiam) (same).  Other courts of appeals have decided similarly in precedential decisions.  *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense—such as statute of limitations—only when the defense is obvious from the face of the complaint and no further factual record is required to be developed." (quotations omitted)); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (addressing appeal of dismissal of *pro se* lawsuit under former § 1915(d) "on the ground that the expiration of the applicable . . . statute of limitations made it clear that the suit lacked 'any arguable basis in law'" and concluding that a district court may dismiss a case under § 1915(d) when a defense, such as the statute of limitations, appears on the face of the complaint); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) (holding that district court properly dismissed *pro se* complaint on statute of limitations grounds under former § 1915(d)); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656-57 (4th Cir. 2006) (explaining that a district court's screening authority under § 1915(e)(2) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered *sua sponte*").

Regarding the applicable statute of limitations for section 1983 actions,

[t]he length of the statute of limitations . . . is governed by the personal injury tort law of the state where the cause of action arose.  *Wallace v. Kato*, 549 U.S. 384,

387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The statute of limitations for a §
1983 claim arising in Pennsylvania is two years. 42 Pa. Cons. Stat. § 5524(2); *see
also Kost v. Kozakiewicz*, 1 F.3d 176, 189-90 (3d Cir. 1993). Federal law governs
a cause of action's accrual date. *Genty v. Resolution Trust Corp.*, 937 F.2d 899,
919 (3d Cir. 1991). Under federal law, a cause of action accrues, and the statute
of limitations begins to run, "when the plaintiff knew or should have known of the
injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142
F.3d 582, 599 (3d Cir. 1998) (citation omitted); *see also Montgomery v. De
Simone*, 159 F.3d 120, 126 (3d Cir. 1998). The determination of the time at
which a claim accrues is an objective inquiry; we ask not what the plaintiff
actually knew but what a reasonable person should have known. *Barren v. United
States*, 839 F.2d 987, 990 (3d Cir. 1988). As a general matter, a cause of action
accrues at the time of the last event necessary to complete the tort, usually at the
time the plaintiff suffers an injury. *See United States v. Kubrick*, 444 U.S. 111,
120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). "The cause of action accrues even
though the full extent of the injury is not then known or predictable. Were it
otherwise, the statute would begin to run only after a plaintiff became satisfied
that he had been harmed enough, placing the supposed statute of repose in the
sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391, 127 S.Ct. 1091
(internal quotation marks and citations omitted).

*Kach v. Hose*, 589 F.3d 626, 634-35 (3d Cir. 2009).

Here, it is apparent that the vast majority of the conduct described in the complaint
occurred more than two years before Caterbone filed the complaint and that he knew or should
have known of the basis for his claims at the time those events occurred.[12] As such, any claims
based on events that took place before December 21, 2014—two years before Caterbone filed
this civil action on behalf of the plaintiffs—are time barred.[13]

---

[12] To illustrate Caterbone's awareness of his claims, and as indicated earlier in this opinion, Caterbone filed prior
actions based on some of the same allegations contained in the complaint. *Compare* Doc. No. 1-1 at 91-92
(discussing incidents of harassment" that allegedly occurred at the Lancaster campaign headquarters for Senator
Hillary Clinton in 2008), *with* Complaint at ¶ 23 (referencing events that occurred at Senator Clinton's Lancaster
campaign headquarters in 2008), *Caterbone, et al. v. Lancaster City Police Bureau, et al.*, No. CIV. A. 08-2982,
Doc. No. 3.

[13] The continuing violations doctrine would not save these barred claims. This doctrine

> is an equitable exception to the timely filing requirement. Thus, when a defendant's conduct is part
> of a continuing practice, an action is timely so long as the last act evidencing the continuing
> practice falls within the limitations period; in such an instance, the court will grant relief for the
> earlier related acts that would otherwise be time barred.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal quotation marks and citations omitted).

Although the court will dismiss the amended complaint for the reasons set forth above, a district court should generally provide a *pro se* plaintiff with an opportunity to amend his complaint unless amending it would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (concluding that "§ 1915(e)(2) did not alter our preexisting rule that *in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"). Having thoroughly reviewed the complaint and Caterbone's other filings in this matter, it is apparent that he cannot cure the above-noted defects.  Therefore, the court will dismiss the complaint with prejudice with the exception of the claims discussed below.

Despite the defects noted above, there are a few limited allegations in the complaint that could arguably support a timely, plausible claim if divorced from Caterbone's allegations about government mind control and harassment, although they do not give rise to claims as currently pled.  More specifically, the complaint and other filings describe an incident that took place on

---

For the continuing violations doctrine to apply, the court

should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Id.* (citations omitted).  "If [a] plaintiff's claims are based on discrete acts which give rise to causes of action that can be brought individually, then the continuing violations doctrine does not serve to extend the applicable statute of limitations periods." *Anders v. Bucks Cty.*, No. CIV. A. 13-5517, 2014 WL 1924114, at *4 (E.D. Pa. May 12, 2014).

Caterbone's allegations do not satisfy the requirements for application of the continuing violations doctrine. In this regard, Caterbone's allegations are so varied and nonsensical that it is not possible for the court to discern that he is complaining of the same types of acts against the same defendants, so as to connect them in a continuing violation.  In fact, on many occasions, Caterbone does not specify the individuals or entities allegedly perpetrating the allegedly wrongful acts against him, particularly when he references the unidentified "hackers."  He also does not plausibly allege any facts to support any inference that the named defendants were somehow conspiring against him; therefore, there is no factual basis to attribute the acts of one of the named defendants to the other named defendants. Most importantly, Caterbone has alleged acts with a degree of permanence that should have triggered, and in fact triggered, his awareness and duty to assert his rights.  *See Cowell*, 263 F.3d at 292 ("The consideration of the degree of permanence is the most important of the factors." (citation and internal quotation marks omitted)).

March 8, 2016, during which Caterbone claims to have been illegally detained by eight NSA officials in Maryland (none of whom are named as defendants), interrogated for two hours about events going back to 1987, and subjected to an illegal search of his car. *See* Doc. No. 1-2 at 104-06. Although Caterbone's allegations regarding the March 8, 2016 incident are conclusory and do not give rise to a claim against any of the defendants named in this case, it is feasible that Caterbone could plead an appropriate basis for constitutional claims based on those events. However, as the venue for claims based on that incident would be improper in this court, the court will dismiss any claims based on the March 8, 2016 incident without prejudice to Caterbone filing a complaint against the appropriate defendants in the District of Maryland.[14]

The complaint also alleges that Detective Bearinger filed petitions for Caterbone's involuntary psychiatric commitment in July 2015 and February 2016 that were based on falsehoods. *See, e.g.*, Doc. No. 1-13 at 99. Although Caterbone describes the petitions as fabricated, he does not provide any facts to support that contention. Caterbone also indicates that officers of the Lancaster City Police Department broke his front door while executing one of the petitions. It is feasible that Caterbone could state a claim against Detective Bearinger and/or other officers of the Lancaster City Police Department based on the events surrounding his involuntary commitment in July 2015 and February 2016. Accordingly the court will dismiss Caterbone's claims based on those events without prejudice to him filing another amended complaint.

---

[14] Since the statute of limitations has not yet expired as to those claims, Caterbone will not be prejudiced by a dismissal of his claims without prejudice. *See Maryland Restorative Justice Initiative v. Hogan*, No. CIV. A. ELH-16-1021, 2017 WL 467731, at *16 (D. Md. Feb. 3, 2017) (explaining that a three-year statute of limitations applied to section 1983 claims filed in the District of Maryland).

### B.     Caterbone's Request for Electronic Filing Privileges

In his "Motion to File Statement 'Enough is Enough,'" Caterbone requests the court's permission to file documents electronically.[15]  Doc. No. 3 at 1.  Caterbone does not provide any reasons or arguments to support his request.  *See id.*  Nonetheless, particularly at this early stage in the litigation, the court will deny Caterbone permission to file electronically based in part upon the court's prior interaction with him and his failure to provide any reasons for his request on this occasion.[16]

## III.     CONCLUSION

For the foregoing reasons, the court will dismiss the amended complaint.  Caterbone's claims are dismissed with prejudice, with the exception of any claims based on the March 8, 2016 events in Maryland (which Caterbone may reassert against the appropriate defendants in the District of Maryland) and any claims based on the events surrounding his involuntary commitment in July 2015 and February 2016.  Caterbone may file a second amended complaint

---

[15] While irrelevant to the court's disposition of this request, the court notes that on page 6 of the motion, Caterbone leaves the bottom of the portion of the page blank, except for the following sentence:  "**THE COMPUTER HACKER WANTS THIS FREE SPACE SO HAVE AT IT – ASSHOLE.**"  Doc. No. 3 at 6.

[16] An example of the court's prior experience with Caterbone having electronic filing privileges is as follows:  In Civil Action No. 16-mc-49, Caterbone filed a purported bankruptcy appeal from a decision by the United States Bankruptcy Court for the Eastern District of Pennsylvania.  Upon his request, the court allowed Caterbone to file documents electronically.  *See* Order, *In re Caterbone*, No. 16-mc-49, Doc. Nos. 10.  The court eventually denied Caterbone's application to proceed *in forma pauperis*, and he filed an appeal from that order to the Third Circuit Court of Appeals.  *See* Order, *In re Caterbone*, No. 16-mc-49, Doc. No. 23; Notice of Appeal, *In re Caterbone*, No. 16-mc-49, Doc. No. 27.

Although Caterbone submitted a few documents shortly after he filed the notice of appeal that related to the court also denying his request to proceed *in forma pauperis* on appeal, the court resolved the issue on the day following the notice of appeal.  Order, *In re Caterbone*, No. 16-mc-49, Doc. No. 32.  From the time the court denied Caterbone's request for leave to proceed *in forma pauperis* on appeal, and even though there was no matter or issue pending before the court, Caterbone proceeded to file approximately 45 documents on the docket over a six-month period.  *See* Doc. Nos. 34-80.  The documents often contained exhibits and, in total, consisted of (easily) at least a thousand pages of text.

These documents had nothing to do with the merits of the bankruptcy appeal.  For example, on November 23, 2016, Caterbone filed a 158-page document that was purportedly a praecipe to add defendants to an action that he had filed in Lancaster County.  *See* Praecipe to Add Defendants, *In re Caterbone*, No. CIV. A. 16-mc-49, Doc. No. 71.  As Caterbone repeatedly abused the privilege of filing electronically and appeared to treat the docket as a message board for other events that he wanted to discuss in his life, the court revoked his permission to file documents electronically on December 5, 2016.  Order, *In re Caterbone*, No. 16-mc-49, Doc. No. 81.

as to the claims challenging these recent involuntary commitments.   The court will deny Caterbone's other outstanding motions.

The court will issue a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.